[Civ. No. 1391. Fourth Appellate District.—March 25, 1936.]

MATHILDA JENSEN et al., Respondents, v. PETER P. HANSEN, Appellant.

Ray W. Hays and Wm. M. Miles for Appellant.

Harold M. Child and David E. Peckinpah for Respondents.

MARKS, J.—This action was brought by the widow and children of Chris Jensen. Jensen was killed in a collision between an automobile in which he was riding, and which was owned and was being driven by Peter P. Hansen, and a car owned by O. A. Olson which was being driven by his wife, Sabina Olson, with his consent. The accident occurred on the morning of September 8, 1933, in the intersection of Academy and Adams Avenues in Fresno County. The case was tried before a jury which returned a verdict against all defendants in the sum of $7,500. All defendants appealed but the appeal of Mr. and Mrs. Olson has been dismissed. We will, therefore, refer to Peter P. Hansen as the appellant.

Academy Avenue runs north and south. It is about forty feet wide with a strip in its center which is improved with a hard oiled surface. From a point about three hundred feet south of Adams Avenue it dips and then rises again to Adams Avenue with the low point about eighteen inches below the grade of Adams Avenue. On the morning of the accident a grape vineyard in full leaf occupied the southwest corner of the intersection and formed a solid obstruction to vision about five feet high. Vision on this corner was further obstructed by two large wooden signs elevated above the grape vines.

Adams Avenue runs east and west. It is about forty feet wide and has a paved strip about sixteen feet wide in its center with improved shoulders of an undetermined width.

On the morning of the accident Mrs. Olson was driving north on Academy Avenue. When about one hundred yards south of the intersection she saw appellant's car approaching from the west at about a like distance on Adams Avenue. When her car entered the depression she lost sight of the Hansen car and did not see it again until she had cleared the vineyard. It was then probably about fifteen feet west of the intersection. Both cars continued on their way and came into collision at a point somewhere between six and thirty inches northeast of the center of the intersection. The Olson car proceeded across the intersection and into a power pole on its northeast corner. The Hansen car was swung around by the impact and came to rest facing northwest with its rear back of the Olson car. Chris Jensen was thrown through a door of the Hansen car and landed on his head on the pavement. He suffered a fractured skull which caused his death.

The speed of both cars in entering and crossing the intersection was estimated at between fifteen and twenty-five miles an hour.

Hansen testified that he did not see the Olson car until he was within a few feet of it and that upon seeing it he swerved to his left in an attempt to avoid a collision.

A study of the record leaves the impression that the Olson automobile entered the intersection first and that the accident would have been avoided had either driver exercised the care required of a reasonably prudent person operating a motor vehicle under the conditions here disclosed.

For some time prior to September 9, 1933, Chris Jensen, Mads Madsen and Peter P. Hansen had been employed as appraisers by the Selma-Del Rey Federal Loan Association. No loan could be made without an appraisement of the property by these three men. When an application for a loan was made it was referred to the appraisers. Sometimes the three men went together to view the property, riding in the automobile of one of them, and then another, so as to equalize the expense of travel. At times, two, or even one, would inspect a property. On such occasions the three would meet and agree on a valuation to be placed upon it from their general knowledge of the country and the description given by the one or two who had viewed it. They received five dollars for each appraisement which they divided equally. The compensation could not be drawn until the appraisement was signed by all three.

A short time prior to September 8, 1933, Chris Jensen had fallen from a ladder and was injured. On the day of the accident the appraisers had several properties to inspect and the three had traveled together in Hansen's car. Prior to the time of the accident they had appraised three properties and were then on their way to appraise a fourth. Mr. Jensen had not alighted from the automobile at the three properties appraised owing to the above-mentioned injuries.

The complaint alleges in general terms the negligence of all defendants. The answer of Hansen denies his negligence; alleges that Jensen was riding as a guest; that he was riding as a passenger; and that Hansen and Jensen were engaged in a joint undertaking. The several special defenses were probably made necessary because the complaint failed to allege the capacity in which Jensen was riding with Hansen.

Appellant does not argue his special defense of joint undertaking. This is probably due to the absence of any evidence showing that Jensen had any right of control over the operation of the automobile in which he was riding on the fatal journey. (See *Bryant* v. *Pacific Electric Ry. Co.*, 174 Cal. 737 [164 Pac. 385].)

In the statement of the issues involved counsel present the following grounds for a reversal of the judgment:

"1. Where the evidence shows the respondent is a guest in appellant's automobile and neither wilful misconduct nor intoxication are pleaded nor proved, may a judgment in favor of respondent be sustained?

"2. When the evidence indicates that the respondent was a guest in the car of the appellant, and neither wilful misconduct nor intoxication are proved or pleaded, is the failure of the court to grant a nonsuit reversible error?

"3. Where in an action for personal injuries the evidence does not support a finding that the appellant was guilty of simple negligence, may a judgment in favor of respondent be sustained?

"4. Where the drivers of two cars are made defendants, one of them being the appellant, is it reversible error for the court, after instructing the jury to the effect that the other driver had the right of way over respondent, to refuse to instruct the jury that such other driver could not blindly and carelessly insist upon such right of way?" Assignments of error one and two will be considered together.

We cannot agree with appellant that Jensen was a guest of Hansen. Section 141¾ of the California Vehicle Act, in effect at the time of the accident, defined a guest as "a person who accepts a ride in any vehicle without giving compensation therefor". Where a real advantage or benefit accrues to the driver from the presence of another person in his car that other person is not a guest. (*Crawford* v. *Foster*, 110 Cal. App. 81 [293 Pac. 841; *Parrett* v. *Carothers*, 11 Cal. App. (2d) 222 [53 Pac. (2d) 1023].) In the instant case the record shows that the three appraisers had so many appraisements confronting them on September 8, 1933, that they decided they could save time by going together in appellant's car. The compensation could not be received by any of them until the appraisements were signed by all of them. Thus the presence of the three appraisers conferred a benefit on each

of them by enabling all of them to receive their compensation more promptly.

We agree with appellant that the evidence in this case is not sufficient to support any implied finding of wilful misconduct on his part. The facts are almost identical with those of the case of *Parrett* v. *Carothers, supra,* in which it was held that wilful misconduct was not established. The negligence shown in the instant case is not as gross as that in the case of *Meek* v. *Fowler,* 3 Cal. (2d) 420 [45 Pac. (2d) 194], in which it was held that wilful misconduct was not proven.

As stated above, the facts of the instant case are almost identical with those of *Parrett* v. *Carothers, supra.* In that case two real estate brokers, Parrett and Rix, were trying to effect an exchange of properties for their respective clients. Rix invited Parrett to accompany him in an automobile to inspect a parcel of property which he hoped might be used in the exchange. If successful, each broker would receive a commission from his client, but would not share in the commission of the other. Rix drove the car in which the two rode and Parrett was killed in an intersection collision caused by the negligence of Rix and another. The court held that Parrett was riding as a passenger and not as a guest and that Rix owed him the duty of ordinary care. A judgment in favor of the heirs at law of Parrett was affirmed and a hearing was denied by the Supreme Court.

We cannot agree with appellant that negligence on his part was not proven. The evidence justifies the conclusion that Mrs. Olson entered the intersection first and on the right of appellant. It thereupon became his duty to yield the right of way to her. (Sec. 131, subd. a, California Vehicle Act, in effect in 1933.) The evidence also supports the conclusion that appellant was not watching the road ahead of him, or for vehicles approaching the intersection from his right, but was watching a truck approaching the intersection from his left. It was his duty to keep a reasonably vigilant lookout for vehicles approaching the intersection from both directions. These facts, and others which it is unnecessary to detail, justify the inference of negligence on his part.

Appellant complains of the refusal of the trial judge to give an instruction requested by him to the effect that even though Mrs. Olson had the right of way at the intersection

"she had no right to proceed blindly in reckless disregard of obvious danger", but that it was her duty to keep her automobile under such control as would enable her to avoid a collision by the use of ordinary care and stop, if necessary, to avoid an obvious danger; that if she could have so stopped by the use of ordinary care, after the danger became apparent to her, or if she failed in other respects to use ordinary care to avoid the collision and failed to do so, then she was "guilty of negligence proximately causing the accident".

We have already expressed the opinion that the evidence shows Mrs. Olson guilty of negligence. However, if we should assume that the instruction properly states the law and that it should have been given, it is clear that the failure to give it had no effect on the verdict of the jury. The instruction merely informed the jury of circumstances under which it could find Mrs. Olson guilty of negligence. It did not attempt to present any circumstances under which appellant would be relieved from responsibility. The jury found Mrs. Olson guilty of negligence and assessed damages against her. It could not have done more had the instruction been given and implicitly followed. There is no prejudice shown in failing to give the instruction.

■ Appellant claims the damages awarded were excessive. Deceased was sixty-six years of age, a good husband and father who provided for his family. What is said on the amount of damages awarded in *Parrett* v. *Carothers, supra,* is exactly applicable to the instant case and we cannot hold the damages awarded here excessive.

■ Appellant complains of two rulings of the trial court on his objections to questions propounded to witnesses for plaintiffs. While C. B. Jensen, a son of deceased and one of the plaintiffs, was on the stand the following occurred: "Q. Do you know anything about your father's business affairs? A. Yes, I do. Q. Can you tell us at this time what his annual—what his business was? A. He was a farmer and he had equities in lots of ranches. Q. By that you mean he had invested his money? A. Yes. Q. And what was his business besides farming? A. He was looking after those interests, and he also worked for this committee that appraised these properties for the Federal Farm Loan Association. Q. Now then, can you tell us what his annual income was, we will say the year just preceding the date of his death? Mr. Hays:

Object to that as not the best evidence, and hearsay. Mr. Child: He says he knows. The Court: If he knows. Mr. Hays: And not the best evidence. (Argument.) The Court: The objection is overruled. A. His income for that year was approximately between thirty-four to thirty-six hundred dollars.'' At the time of the ruling there was nothing to indicate that this witness did not have personal knowledge of his father's annual income. For that reason, and as it did not appear that the evidence was secondary or hearsay, the objection was properly overruled. It was subsequently developed that the answer of the witness was partly based on hearsay. No motion to strike was made. Similar objections were made to like questions asked Mrs. Mathilda Jensen, widow of Chris Jensen, and a like objection was made and overruled. She was not cross-examined, and it does not appear that her answers were not based on her personal knowledge. She might have personally collected, received and handled all of her husband's income.

■ Lastly, appellant presents an unusual circumstance as a ground for reversal of the judgment. At the close of plaintiff's case the jury was excused and each counsel for the defendants made separate motions for nonsuit. Counsel for appellant made the following proffer of proof preparatory to the making of a motion for mistrial: ''I make the offer at this time, your Honor, to prove that juror Jack Hart remained in the court room during the first five minutes of my presentation of a motion for a nonsuit.'' This proffer was denied. In the instructions given the jury the court included one to the effect that statements of counsel must not be regarded as evidence and that that body must look entirely to the evidence in deciding the issues of the case. No proffer of proof was made to the effect that the juror heard any remark of the trial judge during the discussion of the motions. Under the facts here shown we cannot conclude that appellant suffered prejudice sufficient to warrant a reversal of the judgment because of the presence of one juror in the court room during part of his argument.

Judgment affirmed.

Barnard, P. J., and Jennings, J., concurred.