[Civ. No. 14996.  Second Dist., Div. One.  May 13, 1946.]

BURL D. DE PRIEST, Respondent v. CITY OF GLEN-DALE et al., Defendants; GLENDALE CITY LINES, INC. (a Corporation), Appellant.

George H. Moore and Hugh B. Rotchford for Appellant.

S. L. Kurland for Respondent.

WHITE, J.—This action was commenced to recover damages for personal injuries sustained by plaintiff as a result of the collision of his automobile with a bus owned by defendant Glendale City Lines, Inc., and operated by defendant R. A. Murphy. From a judgment in favor of plaintiff entered upon the verdict of a jury defendant Glendale City Lines, Inc., prosecutes this appeal.

The accident occurred at about 11:20 p. m. on the evening of January 2, 1944, at the intersection of Glen Oaks Boulevard and Concord Street in the city of Glendale. Glen Oaks Boulevard, a through arterial highway running in an easterly and westerly direction, consists of two paved 60-foot roadways separated by curbs from an elevated 40-foot private right-of-way of the Pacific Electric Railroad. Concord Street runs north and south and is approximately 40 feet wide. Traffic entering Glen Oaks Boulevard from intersecting

streets, including Concord Street, was required to stop before proceeding into Glen Oaks Boulevard. The railroad tracks between the roadways of Glen Oaks Boulevard were approximately five feet higher than the roadways themselves, the rise from the north edge of the right-of-way to the north track covering a distance of 20 to 25 feet and the drop from the south track to the south edge of the right-of-way occurring within a distance of 9 or 10 feet.

Appellant urges first, that the evidence was insufficient as a matter of law to support the finding that the bus driver was guilty of negligence; second, that plaintiff was guilty of contributory negligence as a matter of law; and third, that the court committed prejudicial error in refusing certain instructions proffered by defendant.

Plaintiff testified that on the evening in question he was driving his 1942 Plymouth coupe east on Glen Oaks Street; that when he was about 200 feet from the west curb line of Concord Street he noticed headlights approximately 40 feet from the streetcar tracks on the north side of Glen Oaks. It was raining and plaintiff's windshield wiper was operating. The bus was moving at approximately five miles per hour or less. Plaintiff was driving between 25 and 30 miles per hour and did not change speed at any time before the accident. When he next saw the bus plaintiff was from 28 to 30 feet west of the curb line of Concord Street, at which time it seemed to speed up and "dart kind of right in front of me," coming down the incline from the tracks. He estimated the speed of the bus at that moment at 15 to 20 miles per hour. He estimated the interval between the time he first saw the bus at 200 feet and when he noticed it for the second time at three seconds. He further testified that during the estimated three second interval "I was watching right ahead. It was raining and bad driving conditions, and I noticed to the right, to the east, that there was a traffic." He further testified as follows:

"Q. What occurred when you saw this bus coming down this incline from the car tracks at an accelerated speed just prior to the accident?

"A. I really can't say. It was just all of sudden, almost instantly.

"Q. About how long a time elapsed from that time until the impact?

"A. About a split second, very short.

"Q. You were going about 25 to 30 miles per hour?

"A. Yes, sir.

"Q. Did you apply your brakes?

"A. I have no recollection."

Plaintiff did not recall whether the inside lights of the bus were on; he was unable to determine from the bus lights whether it was a bus or a passenger car. He estimated that the right side of the bus was about 15 feet from the right edge of Concord Street and that the bus traveled about 20 feet from its position where he saw it for the second time and the point of impact.

On cross-examination plaintiff placed his position when he saw the bus the second time at 57 feet from the point of impact. The following testimony of plaintiff on cross-examination is quoted by appellant in support of its contention that plaintiff was guilty of contributory negligence as a matter of law:

"Q. You were going along here at this rate of speed, 25 or 30 miles an hour, whatever your speed was, you just kept going right along at that rate of speed until you ran right into the side of the bus, didn't you? A. That's what happened. . . .

"Q. You didn't have any trouble in seeing that bus, did you? A. Seeing it throw the headlights, I had no trouble seeing it when it was right in front of me.

"Q. You didn't? A. No.

"Q. When you were a couple of hundred feet away you could see it was a bus, couldn't you? A. No.

"Q. How is that? A. No.

"Q. When did you first know it was a bus? A. When it was directly in front of me, when I saw it the second time.

"Q. Did you talk to any police officers that night? A. Yes, sir, I did.

"Q. Do you remember what you told them? A. Yes, about what I have told you here.

"Q. Is it not a fact that you told the police officers that the first time you saw the bus the bus was crossing the railroad tracks, and at that time you were about 200 feet back, and you just didn't pay any attention to it? A. I have no recollection of it.

"Q. You don't say that you didn't say it, you just don't recollect it? A. I haven't any recollection of saying anything like that."

Further in support of its contention with respect to contributory negligence, appellant quotes the testimony of a police officer as to plaintiff's testimony with reference to the accident at a hearing in the municipal court, as follows: ''He was asked when and where he observed the bus and how far away he was, to which he said he was about 200 feet back from the intersection and the bus was on the railroad track and he did not notice the bus again until he struck it.''

At the time of the trial the driver of the bus was in military service. His testimony was introduced by deposition. He testified that the headlights, the inside lights, clearance lights and taillights of the bus were on; that the bus was colored yellow and white; that at the time of the collision the bus was traveling 3 or 4 miles per hour in low gear; that he made a complete boulevard stop before entering Glen Oaks Boulevard and another stop before crossing the tracks. He stated that he noticed plaintiff's headlights when he made the boulevard stop and that the plaintiff was then approaching or at a boulevard stop on Glen Oaks a quarter of a mile west of the scene of the accident. He further testified as follows:

''Q. As you were proceeding across the tracks state what, if anything, you observed in regard to traffic. A. I noticed the headlights of one car about 200 feet west of me, to my right.

''Q. Where was your bus with relation to the tracks at that time? A. It was right on top of the tracks when I noticed it. . . .

''Q. Did you notice anything in regard to the speed of that automobile at that time? A. As close as I could say it was coming about 35 miles an hour.

''Q. Then what did you do?

''A. He was a good 200 feet away, so I proceeded in low gear right on down across the intersection.

''Q. Then what happened?

''A. I noticed he didn't slow down any, so there was nothing I could do but keep right on going, and about ten feet from the opposite curb he ran into the side of the bus.''

On cross-examination the driver testified in part:

''A. . . . Before I crossed the tracks he was about 300 feet, a good 300 feet away; he was quite a ways away.

''Q. Did you stand there for some little time before you crossed the railroad tracks? A. I stopped and then I continued on in low gear.

"Q. So he was 300 feet away, you would say, as you started to cross the tracks? A. Yes.

"Q. Could you estimate his speed at that time? A. It was not less than 35 miles per hour, if not more."

Plaintiff also testified that he made a series of tests at the intersection of Concord Street and Glen Oaks Boulevard and that it was not possible to see the intersection to the west from the point where the bus driver claimed to have seen it, due to the curve of the roadway of Glen Oaks, palm trees and other obstructions.

In contending that the driver of the bus was not guilty of negligence, appellant states: "The only question remaining is: Where there is no evidence that the Plymouth was less than a quarter of a mile away when the bus came to a full boulevard stop before entering the highway, and where the evidence shows that the bus already proceeded some distance into the intersection when the Plymouth was still more than two hundred (200) feet away on an arterial highway, is there sufficient evidence that the Plymouth constituted an 'immediate hazard' as that term is used in the Vehicle Code?"

Section 552 of the Vehicle Code reads as follows:

"The driver of any vehicle which has stopped as required by this code at the entrance to a through highway shall yield the right of way to other vehicles which have entered the intersection from the through highway or which are approaching so closely on the through highway as to constitute an immediate hazard, but said driver having so yielded may proceed and the drivers of all other vehicles approaching the intersection on the through highway shall yield the right of way to the vehicle so about to enter or cross the through highway."

Appellant's argument, in short, is that although the highway was divided, nevertheless the entire crossing constituted but one intersection; that the driver of the bus made the required stop at a time when the plaintiff (according to the driver) was a quarter of a mile away; that therefore plaintiff's vehicle did not constitute an "immediate hazard," and the bus driver was not guilty of negligence in proceeding across the intersection. Further, argues appellant, negligence cannot be predicated upon the bus driver's act in going ahead after seeing plaintiff's car 200 feet away at a time when the bus was either at or on the tracks. The same facts are urged as showing that plaintiff was guilty of contributory negligence as a matter of law in failing to observe what was in plain view

and in failing to yield the right of way when at a distance of 200 feet he saw the bus upon the tracks. Appellant concedes that, in ordinary circumstances, the question of whether a vehicle constitutes an "immediate hazard" is one for the trier of fact (*Zwerin* v. *Riverside Cement Co.*, 52 Cal.App.2d 715, 718 [126 P.2d 920] and cases therein cited), but cites *Fisher* v. *Wichita Transp. Corp.*, 156 Kan. 500 [134 P.2d 393], in support of the argument that in a situation such as is here presented the question becomes one of law. In the cited case, a jury found that an oncoming automobile 150 feet away constituted an "immediate hazard" to a bus about to make a left turn. The Kansas court held that it was not and directed that judgment be entered for defendant.

■ The situation here presented, however, does not warrant the substitution of this court's views for those of the jury. In the Kansas case the jury made a special finding that the distance was 150 feet and a further finding that at such distance plaintiff's vehicle constituted an immediate hazard. In the present case the elements of speed, distance and position of the respective vehicles at given times were to some extent in dispute. The testimony of plaintiff and defendant bus driver as to the movements of the bus were in conflict. If the jury, as it had a right to do, chose to place credence in plaintiff's version of the accident, it might well have concluded that the bus was stopped, or moving very slowly at the tracks when plaintiff first saw it at a distance of 200 feet. To make a left turn at an ordinary intersection in front of a vehicle 150 feet away is one thing; it is quite another situation when the driver of a 30-foot bus, starting from a standstill in low gear, attempts to cross a railroad track, go down an incline and clear a 60-foot roadway, in front of a vehicle 200 feet away and moving, according to the driver's own estimate, at not less than 35 miles per hour. It must be assumed that the jury believed the testimony of the plaintiff that the bus suddenly increased its speed, thrusting it in front of him so quickly that he was unable to stop before striking it. ■ In these circumstances, the fact that the bus driver made the boulevard stop and also a stop at the railroad tracks did not absolve him from his continuing duty to use due care. ". . . The law is also well settled that if it should appear to the mind of any reasonable person that the vehicle approaching the intersection on the arterial highway is near enough to constitute an immediate danger, and under those conditions the driver of the other vehicle attempts to enter or cross the arterial, he is negligent

in so doing even though he was the first to arrive at or enter the intersection.'' (*Pattisson* v. *Cavanagh,* 18 Cal.App.2d 123, 127 [63 P.2d 868, 64 P.2d 945].)

Likewise, bearing in mind that the jury was entitled to accept plaintiff's version as to how the accident occurred, its conclusion that he was not guilty of contributory negligence must be upheld. It is well established that the question of contributory negligence is primarily one of fact for the jury and becomes a question of law only in rare instances. The language in *Granath* v. *Andrus,* 70 Cal.App.2d 99, 102, 103 [160 P.2d 129], is particularly applicable to the situation here presented. The court there said:

"It is apparent that plaintiff misjudged the speed of the truck and was mistaken as to his ability to cross Anaheim Street in front of it with safety. However, every mistake of judgment is not negligence, for mistakes are made even in the exercise of ordinary care. In a situation like the present, the language of the court in *Couchman* v. *Snelling* (1931), 111 Cal.App. 192 [295 P. 845], at page 195, is apropos: 'The circumstances under which a court can declare that certain acts constitute contributory negligence as a matter of law are rare. (*Swartz* v. *Acme Express & Drayage Co.,* 102 Cal. App. 615 [283 P. 358].) It can seldom happen that the question is so clear from doubt that the court can undertake to say as a matter of law that the jury could not fairly and honestly find for the plaintiff. (*Schierhold* v. *North Beach & M. R. R. Co.,* 40 Cal. 447, 453.) The question is usually one of fact and becomes a question of law only when the evidence is of such a character that it will support no other legitimate inference. (*Zibbell* v. *Southern Pac. Co.,* 160 Cal. 237 [116 P. 513].)' ''

Likewise illustrative of the rule that the question of plaintiff's negligence in assuming that the bus would yield the right of way or in not maintaining a constant lookout as he approached the intersection was one for the jury is the case of *Breland* v. *Traylor Eng. etc. Co.,* 52 Cal.App.2d 415, 422, 423 [126 P.2d 455]. It was there said:

"The contention that the evidence shows that R. H. Breland was guilty of contributory negligence as a matter of law is equally untenable. This contention is based upon Breland's testimony that he observed the Chapman car coming from his right when he was within sixty to sixty-five feet from the intersection, and that he did not look again to his

right until he entered the intersection. It seems to be the thought of appellant that Breland, as a matter of law, was required to keep a constant lookout to his right. The only case cited by appellant on this point is *Jensen* v. *Hansen,* 12 Cal.App.2d 678 [55 P.2d 1201]. In that case, in affirming a judgment in favor of the plaintiff, and in holding that an implied finding of negligence on part of defendant was supported, the court pointed out that the evidence showed plaintiff's car entered the intersection first from the right, and in commenting on the failure of defendant to keep a proper lookout, stated (p. 683) : 'It was his duty to keep a reasonably vigilant lookout for vehicles approaching the intersection from both directions.' That sentence cannot be distorted into a holding that, as a matter of law, under all circumstances, one approaching an intersection must keep a constant lookout both ways. Where a driver sees an approaching car, whether he acted as a reasonable man in not keeping his eye on that car, is generally a question of fact for the trier of the fact. R. H. Breland testified that when he saw the Chapman car it was 'over twice the distance' from the intersection that he was. Mrs. Breland testified the Chapman car was so far from the intersection that when she saw it she 'just dismissed it from my mind.' Whether Breland exercised reasonable care in keeping a proper outlook, and, whether he acted as a reasonable man in not again looking at the Chapman car until he entered the intersection, were questions of fact. The finding of the trial court on this question cannot now be disturbed. (*Lundgren* v. *Converse,* 34 Cal.App.2d 445 [93 P.2d 819] ; *Lee* v. *Stephens,* 8 Cal.App.2d 650 [47 P.2d 1105].)''

Finally, appellant predicates error upon the refusal of the court to give certain proffered instructions. The refused instructions were as follows:

''You are instructed that the plaintiff, Burl D. De Priest, was not entitled to assume or presume that the road ahead of him would be free and clear of traffic. To the contrary, in order to avoid a charge of negligence, it was the duty of Burl D. De Priest to look carefully for approaching traffic and to see that which would have been seen by a person of ordinary care and prudence. Where there is no obstruction a person is presumed to see that which is readily within the range of his vision. You are instructed that it is just as much negli-

gence to look in a careless or negligent manner as it is not to look at all.''

''General human experience justifies the inference that when one looks in the direction of an object clearly visible, he sees it, and that when he listens, he hears that which is clearly audible. When there is evidence to the effect that one did look, but did not see that which was in plain sight, or that he listened but did not hear that which he could have heard in the exercise of ordinary care, it follows that either there is an irreconcilable conflict in such evidence or the person was negligently inattentive.''

''In determining whether there was an automobile so close as to constitute an immediate hazard at the time the bus entered the intersection insofar as this pertains to the charge of negligence against the defendant, you are instructed that the burden of proof is upon the plaintiff; and, unless this charge has been established to your satisfaction by a preponderance of the evidence, you will find that the driver of the bus was not negligent in that regard.''

''A witness false in one part of his or her testimony is to be distrusted in others; that is to say, you may reject the whole testimony of a witness who wilfully has testified falsely as to a material point, unless, from all the evidence, you shall believe that the probability of truth favors his or her testimony in other particulars.

It is also asserted that, because the jury had the task of drawing inferences from established facts, it was error to refuse defendant's proffered instruction on the distinction between direct and indirect evidence.

Appellant's showing of prejudicial error with respect to the refused instructions must be held insufficient, under article VI, section 4½ of the California Constitution, to warrant a reversal. The first proffered instruction, on the duty to look carefully for approaching traffic, was objectionable, in that it singled out the plaintiff alone for application of the rule. The instruction that one is presumed to see that which is in plain sight had no particular application to the present case, as each driver admitted seeing the other vehicle. The instructions given by the trial court, when considered in their entirety, adequately covered the issues presented, including the questions of right-of-way, ''immediate hazard,'' preponderance of evidence, burden of proof, neg-

ligence and contributory negligence. It cannot be said, in view of the entire charge to the jury, that a different verdict might have ensued had the proffered instructions been given or that the error, if any, resulted in a miscarriage of justice.

The attempted appeal from the order denying motion for new trial is dismissed.

The judgment is affirmed.

York, P. J., and Doran, J., concurred.