[Civ. No. 5176.    Fourth Dist.    July 27, 1956.]

OMER W. McGUIRE et al., Respondents, v. SAN DIEGO TRANSIT SYSTEM (a Corporation) et al., Appellants.

Lindley, Lazar & Scales and John H. Barrett for Appellants.

Byron F. Lindsley for Respondents.

GRIFFIN, J.—Plaintiffs and respondents, Omer W. McGuire (hereinafter referred to as plaintiff), and his wife, brought this action against defendant and appellant San Diego Transit System, a corporation, and the driver of a school bus, for damages as a result of a collision of plaintiff's automobile with defendant's 36-foot long bus at an intersection of Linda Vista Road (a city street in the area of Kearny Mesa) and U. S. Highway 395 (a through divided arterial highway), on June 10, 1953. Defendants denied negligence and alleged contributory negligence of plaintiff. A trial without a jury resulted in a judgment for plaintiffs for $10,535.52.

At the point where the freeway (which runs in a general north-south direction) is intersected by Linda Vista Road, it is no longer a freeway, but is a boulevard for through traffic. Stop signs were posted along Linda Vista Road for traffic entering the freeway from the southwest. Linda Vista Road approaches the intersection at an angle and at a point where various traffic islands control the movement of traffic. The intersection is broad. The opposing traffic lanes of the highway are each 24 feet wide, consisting of two lanes separated by a 30-foot center island strip. Drivers who approach the intersection on Linda Vista Road and wish to cross the highway, must cross both north and southbound lanes of traffic and then leave easterly by way of Aero Drive.

Plaintiff, a stranger to the intersection, was driving his Ford car north on the easterly lane of the freeway. The bus driver approached the freeway on Linda Vista Road from the west, stopped at the boulevard stop sign, and then proceeded to cross the southbound traffic lane and, as it traveled into the 30-foot island strip and came to a stop or a "rolling stop" at the west edge of the northbound traffic lane, it then moved out into that lane to cross the highway into Aero Drive.

It is the testimony of plaintiff that just after he came over the crest of the hill he noticed the bus about 500 feet from him, stopped at the stop sign; that it continued into the center island and appeared to stop, when plaintiff was about 100 feet from the intersection; that he was traveling about 45 miles per hour at the time (the speed limit was 55 miles per

hour on the freeway); that the bus driver "zoomed" out to cross the freeway and that there was nothing he could then do because the bus blocked both northbound traffic lanes at the time; that he applied his brakes and swerved to his right to avoid the collision and sideswiped the bus with his car. It struck it near its front portion and ended up in Aero Drive. Plaintiff testified he saw no other vehicles or trucks in the northbound lane at the time but said there was southbound traffic approaching from the north so he could not travel in that direction to avoid the accident.

The bus driver testified he stopped at the stop sign and no traffic was approaching from the north; that he proceeded into the center island and came to a rolling stop; that he then observed a red truck approaching in the west northbound lane, about 500 feet from him at about 35-45 miles per hour; that he saw no other car in that direction; that believing he had time to cross the northbound freeway, he quickly accelerated the engine and was pulling across it at 5-10 miles per hour, without further looking toward the south, when he then heard the screeching of brakes; that he then turned and saw plaintiff's car coming toward the bus, about 2 feet from it; that the bus was then practically off the highway; that he continued on and came to a stop some 80 feet east on Aero Drive.

A truck driver testified that he was driving a heavily loaded red truck at about 45 miles per hour on the easterly northbound lane of the freeway and, seeing the bus stop at the intersection and then move into the island and starting to move onward, he said to himself, "Oh, no, not now," so he moved over into the west northbound lane to miss the bus and just about then plaintiff's car passed his truck in the east northbound lane at about 75 miles per hour; that about that time the bus driver "shot out" in front of both of them and plaintiff applied his brakes and swerved to his right. The truck driver applied his brakes and just missed hitting the bus after it passed in front of him.

There was considerable other evidence pertaining to skid marks and the position of the respective vehicles, as well as testimony of the school children as to their version of the accident.

As we construe defendants' claim on appeal, the evidence is not sufficient to show negligence on the part of the bus driver and if so, the evidence conclusively shows contributory

negligence on the part of the plaintiff for failure to yield the right of way at the intersection, under section 552, subdivisions (a) and (b), Vehicle Code. They cite such authority as *Casselman* v. *Hartford Acc. & Indem. Co.,* 36 Cal.App.2d 700 [98 P.2d 539]; *Grasso* v. *Cunial,* 106 Cal.App.2d 294 [235 P.2d 32]; and *Couchman* v. *Snelling,* 111 Cal.App. 192 [295 P. 845].

A mere notation of the facts shows that the trial court was justified in finding contrary to defendants' claim. A jury might well have believed that both the red truck and plaintiff's car were so close to the intersection as to constitute an immediate hazard. Accordingly, section 552, subdivisions (a) and (b) of the Vehicle Code could not be applied to defendant. (*Dawson* v. *Williams,* 127 Cal.App.2d 38 [273 P.2d 75]; *Graf* v. *Garcia,* 117 Cal.App.2d 792 [256 P.2d 995]; *De Priest* v. *City of Glendale,* 74 Cal.App.2d 464 [169 P.2d 17]; *Zwerin* v. *Riverside Cement Co.,* 52 Cal.App. 2d 715 [126 P.2d 920]; *Almanerz* v. *San Diego Elec. Ry. Co.,* 15 Cal.App.2d 423 [59 P.2d 513]; *Mason* v. *San Diego Elec. Ry. Co.,* 57 Cal.App.2d 17 [133 P.2d 841].)

The evidence does not show contributory negligence as a matter of law and the burden of proving it was upon the defendants. (*Anthony* v. *Hobbie,* 25 Cal.2d 814, 818 [155 P.2d 826]; *Davis* v. *Franson,* 141 Cal.App.2d 263 [296 P.2d 600].)

Complaint is made in reference to the form of the findings. It is argued that although the court found defendant driver "did negligently drive and operate a passenger bus . . . in the aforesaid intersection . . . and did cause said bus to enter upon said highway number 395 in a negligent, reckless . . . careless manner in the path of a Ford automobile ·. . . driven by plaintiff . . . in a careful, prudent and lawful manner," it should have specifically found the violations of law which defendants committed, or the particular facts indicating a breach of duty on their part; that there was no specific finding as to the speed of plaintiff's car at the time and no finding as to which driver had the right of way.

The findings generally followed allegations of the complaint. It is true that findings of fact should be definite and certain and so framed that the defeated parties can specify intelligibly the particular findings which they claim are not supported by the evidence. However, findings should be of ultimate facts and it is not always necessary to state the probative or evidentiary facts where a finding of ulti-

mate facts includes a finding of all of the probative facts necessary to sustain it. ■ A finding is, if possible, to be given such a construction as will uphold the judgment. (*Gantner & Mattern Co.* v. *Hawkins,* 89 Cal.App.2d 783 [201 P.2d 847]; *Pellegrino* v. *Los Angeles Transit Lines,* 79 Cal. App.2d 40 [179 P.2d 39]; *Morrow* v. *Learned,* 55 Cal.App. 745 [204 P. 234]; *Ryan* v. *San Diego Elec. Ry. Co.,* 52 Cal. App.2d 460 [126 P.2d 401]; 24 Cal.Jur. 984, § 213.)

■ As heretofore stated, the question whether defendants had the right of way at the intersection was a factual one. Even if it be assumed that defendant had the right of way at the time of his original entry into the intersection, the fact that the bus was stopped in the center portion of the street and later continued on in the face of oncoming traffic, without due caution and circumspection, might well justify a finding of negligence of the bus driver. The question of the speed of plaintiff's car was in dispute and his conduct, at the time, may have justified a finding of lack of negligence on his part.

■ The claim that the award of damages was not supported by the evidence is not well taken. Mrs. McGuire, according to plaintiff's evidence, suffered a possible cerebral concussion with resultant headaches. Her tongue was painfully lacerated on the left side. She had a sprained neck and contusions in that area and on her body. Her right forearm was lacerated and permanently disfigured by a scar. The left lower sacroiliac was sprained and she suffered pains in her subsequent pregnancy. She subsequently underwent an operation on her nose which changed the shape of it, and it still bleeds at times and becomes congested. The award to her was $6,500. Her husband suffered many contusions and abrasions on his body and a strained left shoulder resulting in continual painful bursitis. His award was $1,500. The remainder of the award was for automobile damage and other special damages. There could be no basis for a complaint in this respect. All of these claims were considered on a motion for new trial and rejected, and consideration should be given to this fact. (*Hartzell* v. *Myall,* 115 Cal.App.2d 670 [252 P.2d 676].)

The judgment is affirmed.

Barnard, P. J., and Mussell, J., concurred.