[Civ. No. 24572.   Second Dist., Div. Two.   July 28, 1960.]

WARREN PAUL HUTCHISON et al., Respondents, v. ERNEST C. ELLIOTT et al., Appellants.

RICHARD N. RAMSAY, Respondent, v. ADOHR FARMS COMPANY (a Partnership) et al., Appellants.

Teague, Dixon & Adams and James E. Dixon for Appellants.

Morton J. Salsberg and Neil D. Heily for Respondents.

KINCAID, J. pro tem.*—Adohr Farms Company, a partnership, and Ernest C. Elliott, defendants in the above named consolidated actions, appeal from orders made therein granting plaintiffs a new trial. The motions for new trial were granted upon the specific ground of insufficiency of the evidence to sustain the verdicts returned in favor of defendants.

The basic question on appeal is whether there is sufficient evidence of negligence on the part of defendants having a proximate causal connection with the injury or damage complained of by plaintiffs to warrant the granting of the new trial.

As recently stated in *Yarrow* v. *State*, 53 Cal.2d 427, 434 [2 Cal.Rptr. 137, 348 P.2d 687] : ''The rules on appeal from an order granting a new trial are well settled. All presumptions favor the order as against the verdict and the order will be affirmed if it may be sustained on any ground, although the reviewing court might have ruled differently in the first instance. [Citations.] Appellate review is not limited to the ground stated in the lower court's order [citations] with the exception of the ground of insufficiency of the evidence. If the order does not specify that it is granted on this ground, it must be conclusively presumed on appeal that the order was not based thereon. (Code Civ. Proc., § 657.) In considering the sufficiency of the evidence on the hearing of a motion for new trial it is the exclusive province of the trial court to judge the credibility of the witnesses, to determine the probative force of testimony and to weigh the evidence, and it may draw reasonable inferences therefrom opposed to those drawn by the trier of fact at the trial. [Citations.] It is only where it can be said as a matter of law that there is no substantial evidence to support a contrary judgment that an appellate court will reverse an order granting a new trial on this ground. [Citations.] Error is not presumed and the burden is upon

---

*Assigned by Chairman of Judicial Council.

the plaintiffs herein to affirmatively show its presence in the record [citations] or manifest and unmistakable abuse of discretion. [Citations.]"

An order of the trial court granting a new trial will not be interfered with by an appellate court in the absence of a showing of manifest or unmistakable abuse of discretion.

"It is not only the right, but the duty of the trial judge to grant a new trial when, in his opinion, he believes the weight of the evidence to be contrary to the finding of the jury. Trial judges have been commended, rather than condemned, for their actions in granting new trials under these circumstances. See [citations]; and *Clippinger* v. *Reiss*, 17 Cal.App.2d 604 [62 P.2d 418], wherein it is said: '. . . a trial court is not only authorized but is under a duty to grant a new trial whenever in its opinion the evidence upon which the former decision rests is insufficient to justify the decision and . . . its action in granting a new trial on this ground is discretionary to the extent that if any appreciable conflict exists in the evidence the court's action may not be disturbed on appeal.' [Citations.]" (*Tice* v. *Kaiser Co.*, 102 Cal.App.2d 44, 46 [226 P.2d 624].)

The defense of contributory negligence is not here available to defendants as plaintiffs were guests and any negligence on the part of Donald Barrington, the driver of the automobile in which they were riding, may not be imputed to them.

A review of the evidence discloses that the accident happened at the intersection of Calleguas Road and Highway 101 in Ventura County shortly before midnight on September 1, 1957. Plaintiffs were guests in a Cadillac automobile being driven by Barrington, who was not a party to the lawsuit. They were going west toward Ventura from Van Nuys on Highway 101. At the point where the accident occurred, and in the portion of Highway 101 over which the Barrington car approached the accident scene, the highway was substantially straight and level. Calleguas Road enters Highway 101 from the south, forming a "T" intersection. There was a standard California highway marker denoting a "T" intersection which the Barrington car passed some 400 feet before it came to the intersection. There was a stop sign which required traffic on Calleguas Road to stop before entering Highway 101.

Calleguas Road at that time was about 14 feet wide; Highway 101 was divided into two lanes, each 10 or $11\frac{1}{2}$ feet wide, one lane for eastbound and one for westbound traffic. In addi-

tion to the paved section of the highway, there were shoulders six or seven feet wide on each side of Highway 101.

Defendant Elliott was driving an empty flat-bed truck and trailer belonging to defendant Adohr. The overall length of the truck and trailer was 60 feet and the overall weight was 28,500 pounds. The truck was equipped with head lights, clearance lights which extended one and one-half or two inches from the side of the truck, recognition lights on top of the truck's cab, and tail lights, all of which had been cleaned a short time before and all of which were lighted, bright and plainly visible. In addition there were reflectors.

Defendant Elliott had been a truck driver for 11 years. On the night of the accident he went to his place of employment at about 10 p.m. and serviced his truck. When he was finished he drove three-quarters of a mile to a place where he put fuel in the truck, then drove one and one-half miles until he came to the intersection of Calleguas Road and Highway 101. He stopped with the front end of his truck within one or one and one-half feet of the intersection of Calleguas Road and the south shoulder line of Highway 101. He signaled for a left turn and waited 30 seconds for traffic to clear the intersection.

Traffic on Highway 101 was light but there were three cars coming from Elliott's left which went through the intersection while he waited. Two of these were traveling at a speed of 35 miles per hour. (There was no testimony about the speed of the remaining vehicle.)

Elliott testified he saw the last of these three vehicles approaching the intersection about 900 feet to his left. While he was stopped he saw the Barrington vehicle approaching from his right, first at a distance of one-half mile and then, just before he started to move forward, at a distance of one-quarter mile.

It took 30 seconds for traffic to clear the intersection. The truck was in gear. When the last of the three cars had passed through the intersection, he started to move forward and at the same time began to turn to the left.

James Wilson, a California highway patrolman, was parked on the right shoulder of Calleguas Road a short distance back from the intersection. He saw the accident and events leading up to it. He was called as a witness for plaintiffs. He testified that when the last of the three oncoming vehicles was just entering the intersection, he looked at the Barrington car, and that it was about 1,000 feet away from the intersection going at a speed of approximately 45 miles per hour. He then looked

back at the intersection. This last oncoming car had just cleared the intersection; and, after a slight pause of a second or two, the truck started to move forward. He watched the truck a short time, not more than a few seconds. He was not parked directly behind the truck, but was parked behind and to the right. He could see that the truck was turning left and he knew that the truck had crossed into the intersection, but he could not say how far inside the intersection the truck had gone. He looked at the Barrington car again and saw that it was then about 500 feet away from the intersection, going approximately 50 miles per hour.

The truck driver did not look again at the Barrington car after he had commenced his turn. The maximum speed which he achieved as he moved forward was 4 miles per hour. He could not say what his average speed was as he went through the intersection.

Meanwhile the Barrington car came down the Ventura side of the Conejo grade at a speed of 30 to 35 miles per hour, passed over a culvert at the bottom of the grade at a speed of 40 to 45 miles per hour and picked up a little speed gradually as it approached the scene of the accident, never going more than 45 or 50 miles per hour. Barrington did not see the truck until he was three or four car lengths from it.

The automobile struck the truck, damaging the right front fender, tire, and headlights and the right half of the front bumper on the truck, and damaging the front and left side of the automobile. The highway patrolman saw the automobile lose some speed immediately before the impact and it left about 84 feet of skid marks leading up to the point of impact.

The point of impact was determined by a highway patrolman as being four feet south of the north edge of the pavement of Highway 101 and seven feet west of the westernmost line of the intersection of Calleguas Road with Highway 101. This designation of the point of impact is not exact but is approximate and may be off 1½ or 2 feet. At the instant of the impact the left rear wheel of the trailer was still on Calleguas Road. After the impact Elliott applied his brakes; he did not do so before the impact.

The place where the accident happened was a construction zone on Highway 101 and there was a 35-mile speed limit sign somewhere in that part of the highway between the bottom of the Conejo grade and Calleguas Road although plaintiff Ramsay did not notice any construction signs. However there was no heavy construction equipment being operated in that

vicinity at that time. Elliott was familiar with the road and knew that vehicles did sometimes drive through that point at speeds as great as 55 miles per hour.

There was a row of palm trees somewhere along the south side of Highway 101, but Elliott's truck was visible at the place where it was stopped (and as it began to move forward) to the driver of the Barrington car. Barrington had a clear view of the intersection. There was no fog; the weather was clear.

It was stipulated that an automobile traveling 50 miles per hour can be brought to a normal stop in 235.3 feet, including normal reaction time of three-quarters of a second and that, at 45 miles per hour, the normal stopping distance is 221.1 feet.

Neither plaintiff testified about how the accident happened. Hutchison was asleep and Ramsay was looking over his right shoulder at something else at the crucial moments.

At the scene of the accident the highway patrolman questioned Elliott who said he thought he had "all kinds of time."

Defendants argue the trial judge abused his discretion in granting plaintiffs a new trial on the ground that there was insufficient evidence to justify a verdict for the defendants. They contend the evidence herein demonstrates, as a matter of law, that pursuant to the provisions of section 552, Vehicle Code, as it existed at the time of the accident, Elliott had the right of way entitling him to enter the intersection ahead of Barrington; that having so entered the intersection at a time when the Barrington automobile was still between 500 and 1,000 feet away the latter did not then constitute an immediate hazard and the duty fell upon Barrington to yield the right of way to Elliott.

Section 552 of the Vehicle Code (now § 21802 as amended) then read as follows: "Vehicle Entering Through Highway. (a) The driver of any vehicle shall stop as required by Section 577 of this code at the entrance to a through highway and shall yield the right of way to other vehicles which have entered the intersection from the through highway or which are approaching so closely on the through highway as to constitute an immediate hazard. (b) Said driver having so yielded may proceed and the drivers of all other vehicles approaching the intersection on the through highway shall yield the right of way to the vehicle so about to enter or cross the through highway."

For purposes of our consideration as to whether there is any substantial evidence of negligence on the part of defendants

having a proximate causal connection with the injury or damage claimed by plaintiffs, we are not permitted to consider any negligent acts of Barrington as the issue of contributory negligence is not here presented.

The evidence herein discloses that Elliott elected to begin the movement of a 60-foot long truck and trailer, weighing 28,500 pounds, during darkness at a time near midnight, from an obscure sideroad into a major arterial highway, from a standing start, while the oncoming Barrington automobile was between 500 and 1,000 feet distant and traveling 45 to 50 miles per hour. When starting forward he knew his vehicle could only gradually accelerate from zero to about four miles per hour in completing his left turn. He must have known that, in the normal course of its travel, the automobile would have reached the intersection at a time well before his vehicle could have cleared the south half of Highway 101 and therefore Barrington, on seeing the truck-trailer, would have been compelled to either fully stop or at least appreciably slow his automobile. Elliott still had an opportunity to stop his vehicle at a point south of the north half of Highway 101, thus enabling Barrington to pass by, but he elected to proceed slowly into his left turn thus blocking both lanes of the highway.

The foregoing facts clearly refute defendants' contention that Elliott had the right of way over Barrington as a matter of law under the provisions of section 552, Vehicle Code. It is the established rule that, in ordinary circumstances, the question of whether a vehicle constitutes an ''immediate hazard'' is one for the trier of fact. (*De Priest* v. *City of Glendale*, 74 Cal.App.2d 464, 470 [169 P.2d 17]; *Zwerin* v. *Riverside Cement Co.*, 52 Cal.App.2d 715, 719 [126 P.2d 920]; *Stapp* v. *Marshburn*, 165 Cal.App.2d 808, 812 [332 P.2d 798].) Whether, under all existing circumstances, Elliott had such right of way entitling him to enter the intersection ahead of the oncoming automobile, or whether the latter was approaching so closely as to constitute an immediate hazard, were factual matters subject to determination and as to which reasonable minds might well differ. Had the judgment been rendered against defendants the foregoing evidence would sufficiently have supported it.

The trial judge, in ruling upon the motions for new trial, was entitled to weigh and consider the evidence, determine its probative force and judge the credibility of the witnesses. Having done so he was entitled to exercise his discretion by granting such motions even though the jury, as the trier of the facts, had arrived at a different conclusion.

No abuse of discretion is shown in the granting of a new trial on the ground of insufficiency of the evidence and the determination of the trial judge in this respect is conclusive. The orders appealed from are affirmed.

Fox, P. J., and Ashburn, J., concurred.