[Civ. No. 767. Fourth Appellate District.—April 17, 1933.]

MAE BALLARD JACOBSEN et al., Respondents, v. H. S. VAUGHN, Appellant.

H. S. VAUGHN et al., Appellants, v. CHRIS JACOBSEN et al., Respondents.

Ray W. Hays for Appellants.

Wakefield & Hansen and Conley, Conley & Conley for Respondents.

BARNARD, P. J.—On October 10, 1930, an automobile driven by H. S. Vaughn collided with an automobile driven by Mae Ballard Jacobsen at the intersection of Whites Bridge Road and Chateau-Fresno Avenue in Fresno County, resulting in serious injuries to Mrs. Jacobsen. Whites Bridge Road runs east and west, having a sixteen-foot pavement along its center. Chateau-Fresno Avenue runs north and south, its central portion being thirteen and a half feet wide. On the occasion in question, Mrs. Jacobsen was proceeding south on Chateau-Fresno Avenue and Vaughn was proceeding east on Whites Bridge Road. When Mrs. Jacobsen was almost across the paved portion of Whites Bridge Road her car was struck on its right-hand side by the front end of the Vaughn car. The two cars came to rest, side by side, near the southeast corner of the intersection, the Jacobsen car being overturned while the Vaughn car remained upright. It appears from the evidence that Vaughn's view to his right, as he approached this intersection, was obstructed and that his view to his left was partially obstructed by a pumping plant, a short distance north of Whites Bridge Road and west of Chateau-Fresno Avenue, and by weeds growing along an irrigation ditch. An action filed by the Vaughns and one filed by the Jacobsens were consolidated and tried together before a jury. From judgments in favor of the Jacobsens the Vaughns have appealed.

It is first urged that Mrs. Jacobsen was guilty of contributory negligence, as a matter of law, in exceeding the speed limit, in failing to look and in not driving upon the right half of the highway while crossing the intersection. In reference to the speed at which she was traveling, Mrs. Jacobsen testified that she entered the intersection at fifteen miles per hour. At another time she stated that her speed might have been a little more or a little less than the figure named. ■ With reference to which side of the road she was on, the evidence most favorable to appellants' contention indicates that she was traveling about the center

of the oiled portion of Chateau-Fresno Avenue. Other evidence would indicate that she was nearer her right-hand side of that road. If, as claimed, a portion of her car was on her left-hand side of the center of that road, the only effect would have been to give Vaughn more time to avoid the accident, and such a situation could not be held to conclusively show contributory negligence under the circumstances here appearing. ■ The main negligence relied on in this connection is the failure of Mrs. Jacobsen to look to her right as she entered the intersection. She testified that at a point which she estimated to be about two hundred feet north of the intersection, she looked to her right and saw no car approaching. Immediately thereafter, she looked to her left and saw another car approaching from the east on Whites Bridge Road. She admitted that she did not again look to the right as she entered the intersection. The driver of the car last referred to, which was going west on Whites Bridge Road, testified that he saw both of the cars involved in this accident and that had he not stopped he would have arrived in the intersection just as these cars struck. The jury could well have inferred that this car was very close to the intersection when Mrs. Jacobsen observed it. Her statement as to how far north of the intersection she was when she looked to the right was only an approximation, and could not be exact. With reasonable allowances for variation in this distance and for her position when she looked to her left and observed the car approaching from the east, with a question as to the exact speed at which the respective cars were moving, and with the further fact that the driver of this other car would apparently arrive in the intersection at the same time, it is easily possible that her failure to again look to her right was caused by what she saw and the apparent necessity of avoiding a collision with that car. Having taken some precaution, the question as to whether she did all that a reasonable person would have done under the circumstances was one for the jury. Even if she could be said to have been negligent as a matter of law, it does not follow, as a matter of law, that this negligence was a proximate cause of the accident. Taking the entire circumstances, including the evidence as to what was done by the driver of the Vaughn

car, we think the question of contributory negligence was one of fact rather than one of law.

 The second point raised is that the court erred in admitting evidence of the poverty of the Jacobsens. The evidence referred to related to what Mr. Jacobsen did with their children while his wife was laid up through her injuries. This evidence was responsive to one cause of action in the complaint, in which Mr. Jacobsen sought damages for loss of his wife's services. Not only was the evidence admissible, but, considered in itself, it is not subject to the criticism made.

 It is earnestly urged that the court erred in giving to the jury an instruction embodying the doctrine of the last clear chance. It is contended that the general circumstances did not warrant the giving of such an instruction and also that the doctrine was not available to Mrs. Jacobsen, since her negligence, in not keeping a proper lookout, continued down to the very moment of the collision. In considering these contentions, certain other evidence is material. Mr. Vaughn testified that when he was about one-eighth of a mile west of this intersection, traveling about twenty-five or twenty-seven miles an hour, he observed the Jacobsen car coming south on Chateau-Fresno Avenue and about the same distance from the intersection; that when he·saw that car he took his foot from the accelerator and slowed down, entering the intersection between fifteen and seventeen miles an hour; and that when he entered the intersection he saw the Jacobsen car to his left. At one time he testified his car was within the intersection and the other car also was within the intersection, but just north of the paved portion of Whites Bridge Road at the time he saw it. At another time he placed his car some fifteen feet west of the intersection and the other car about twice that distance north of the intersection at the time he observed it. Again, he testified that as he was crossing a culvert (which is sixteen feet west of the intersection line) he saw the other car approximately twenty feet north of the intersection. This culvert is between thirty-five and forty feet from the point where the collision occurred. A signed statement made by Vaughn immediately after the accident was introduced, in which he stated that he was traveling on Whites Bridge Road at the rate of

approximately thirty miles per hour, "and when near Chateau-Fresno avenue I noticed car No. 2 approximately 15 feet from entering the paved portion of Whites Bridge road. I figured the driver of car No. 2 was going to stop so I kept on going". The driver of the car which was proceeding west on Whites Bridge Road testified that when Mrs. Jacobsen's car entered the highway, Vaughn's car was possibly ten rods down the highway. At other times this witness fixed the distance at which Vaughn's car was down the highway as two or three car-lengths, and as possibly thirty or forty feet. He also testified that the front wheel of Mrs. Jacobsen's car was within a foot of being off the highway to the south, at the time it was struck. There is evidence that Vaughn's car left skid marks on the pavement for a distance of about twenty feet before the point of collision, and of other skid marks indicating that the Jacobsen car was shoved sideways from the point of impact. Mrs. Jacobsen testified that she did not see the Vaughn car prior to the collision. It appears that Vaughn saw the other car when some distance away, that he slackened his speed, that he was watching the road on both sides, that he approached the intersection at from fifteen to seventeen miles an hour, that he again saw the other car some distance before he entered the intersection, that he "figured" it would stop and so kept on going, that he observed that Mrs. Jacobsen did not slacken her speed or change her course, that she entered the intersection first and was proceeding across it, that he proceeded thirty-five or forty feet after seeing her car but with his brakes on for one-half of this distance, and that he struck the other car when it had nearly crossed the pavement. There is some evidence justifying the inference that at the time Mrs. Jacobsen entered the intersection, the Vaughn car was farther therefrom than indicated by his testimony. We think this evidence was sufficient to justify the submission to the jury of the question as to whether Vaughn had an opportunity to avoid the accident. (*Palmer* v. *Tschudy,* 191 Cal. 696 [218 Pac. 36, 38]; *Atkins* v. *Bouchet,* 86 Cal. App. 294 [260 Pac. 828].)

▮ Appellants further argue that the doctrine of the last clear chance was not available to Mrs. Jacobsen because she was negligent in not looking and that this continued up to the moment of the impact. They rely upon such

cases as *Young* v. *Southern Pac. Co.*, 189 Cal. 746, 755 [210 Pac. 259, 262], and *Garrison* v. *Pearlstein*, 68 Cal. App. 326, 330 [229 Pac. 348]. In the first of these cases the court said: "This exception to the general rule, however, has no application to a situation where, by their mutual carelessness, an injury ensues to one of two parties, both of whom are contemporaneously and actively in fault down to the very moment of injury."

There is a distinction between the negligence of a party through which he is placed in a position of peril and a further or continued negligence through which he fails to take measures to escape which are available to him. The entire doctrine has reference to a situation in which a party may have been negligent in getting into a perilous situation. If that negligence continues, in the sense that the party does not avail himself of an opportunity open to him to escape from the perilous situation, the doctrine cannot benefit him. On the other hand, though his peril be created by his own negligence, if he has no opportunity to escape, while the other party, knowing his situation, does have the opportunity to avoid the injury, the doctrine applies. As was further said in *Young* v. *Southern Pac. Co.*, *supra*: "Obviously, if both parties to an accident could, by the exercise of ordinary care, have avoided it, neither can be said to have had the last clear chance. It is only when a defendant charged with the negligent infliction of the injury, knowing plaintiff's peril, could and the injured plaintiff could not have avoided the injury that the defendant is liable. The liability is placed upon the party inflicting the injury only if immediately before the actual infliction of the injury the injured person was in such a situation as to be unable by the exercise on his part of reasonable and ordinary care to extricate himself and vigilance on his part would not have averted the injury."

In *Palmer* v. *Tschudy*, *supra*, the court said: "The rule does not require that the inability of the plaintiff to escape the danger shall be due to a situation which renders it physically impossible for her to do so. It applies equally when she is wholly unaware of the danger and for that reason unable to escape it. But the rule also requires that if she is aware of the danger, or becomes aware of it, she must therefore exercise ordinary care for her own protection."

Under the circumstances shown, we think the giving of the instruction complained of was warranted.

In our opinion the decisions of the jury upon questions of fact properly submitted to it are controlling here.

The judgment is affirmed.

Marks, J., and Jennings, J., concurred.