[Civ. No. 14376. Second Dist., Div. One. June 6, 1944.]

JOHN CLIFTON GLYNN, Appellant, v. ROBERT A. VACCARI, Respondent.

W. W. Comstock for Appellant.

Elbert E. Hensley and John H. Klenke for Respondent.

YORK, P. J.—Plaintiff appeals from a judgment in favor of defendant rendered by the trial court sitting without a jury in an action for damages on account of personal injuries sustained by said plaintiff in a collision between his motorcycle and the automobile of defendant.

The collision occurred about three o'clock in the afternoon of July 18, 1942, a bright, sunny day, at the intersection of Olympic Boulevard and Gerhart Street in the county of Los

Angeles. Appellant was proceeding easterly on Olympic Boulevard, a through highway, 70 feet in width, and he testified that as he approached the intersection in question, he was traveling 20 feet from the south curb of Olympic at a speed of 35 to 40 miles per hour, and when he was 300 or 400 feet west of the intersection, he observed that respondent, who was traveling south on Gerhart Street, had stopped at a point near the stop sign on that street, which was approximately 30 feet north of the north curb line of Olympic Boulevard; that respondent "started out from the stop sign very easily; that he shifted into second gear, about 20 feet from the north side of the highway he shifted into second gear, I believe, and picked up speed"; and started across Olympic at about 15 miles per hour. "He proceeded straight south after he entered the highway and after he had crossed the middle of the street, approximately 15 feet, he heard me coming and so he stopped"; whereupon appellant's motorcycle struck the right rear fender of respondent's automobile, which was then "seven feet south of the middle" of Olympic Boulevard. Appellant also testified that he intended to pass in front of respondent's automobile, but that respondent speeded up when he reached the center of the boulevard, and the collision occurred when appellant attempted to go around back of respondent's automobile. Appellant sustained a "compound fracture of the tibia and fibula of the right leg about three inches above the ankle."

Two witnesses testified that they were present in the Justice's Court of Montebello Township when respondent Vaccari testified "that he stopped, looked to the left and to the right and saw a truck and followed the truck up the street and looked to the left again and proceeded across the street without looking to the right again."

A third witness, who was traveling east on Olympic Boulevard at the time of the accident, testified that respondent Vaccari stated in said justice court that "he made the stop; then noticed a truck coming on his left and watched the truck some 75 yards down the road on his right; then looked ahead and continued across the street." It was also shown that the motorcycle left skid marks on the pavement for a distance of 99 feet and that the automobile left none. "The skid mark started in a straight line; then it broke to the south and eventually again turned to the north just before

720

the start of the impact.'' After the impact respondent's car was parked at the west curb of Gerhart Street south of Olympic Boulevard. State Traffic Officer Thomas, who investigated the accident, testifying as an expert gave as his opinion that appellant was traveling at a speed of approximately 45 miles per hour at the time of the collision.

Respondent Vaccari testified that he approached the intersection in question and came to a complete stop at the north curb line of Olympic Boulevard where he waited ''until three or four cars went west and some east''; that as he started into the intersection a truck went by; ''I let that get a distance of 75 yards approximately; then I looked to my left and there was two cars about a block and a half down, coming from the east, that is going west; and I looked to my left, as I proceeded across, at about the center line, I looked to my right and I kept going across. I never saw him (appellant) coming down Olympic. There are shadows from the trees that cover almost three-fourths of that curb lane, and when I first saw him is when I heard the screech of brakes coming down.'' Also, that he did not stop his car before the motorcycle struck him and did not shift gears after starting up or while he was in the intersection; that when he saw appellant ''coming down on me, I tried to accelerate but it just didn't pick up right away''; and the motorcycle struck ''the extreme end of my right fender and bumper.''

■ Appellant urges that the trial court's findings of fact V and VI, to the effect that when respondent *entered* the intersection, appellant's motorcycle, which was then a distance of between 300 and 400 feet west of the intersection, did not constitute an immediate hazard to respondent,—are erroneous because (1) they disregard section 82.5 of the Vehicle Code requiring one to stop before *crossing* as well as before *entering* the highway, and that said findings adopt section 552 of the Vehicle Code as the only law applicable to the facts; (2) that they are based on a construction of section 552, *supra,* to the effect that the point of *entrance* to the through highway is the fixed and only place where respondent was required to observe approaching traffic or yield to it; and (3) they are contrary to the truth, i. e.: that appellant's motorcycle was an immediate hazard, else there would have been no collision.

Section 82.5 of the Vehicle Code reads: ''A 'through highway' is a highway or portion thereof at the entrance to which

vehicular traffic from intersecting highways is required by law to stop before entering or crossing the same, and when stop signs are erected as provided in this code."

Section 552 of the same code, provides: "The driver of any vehicle which has stopped as required by this code at the entrance to a through highway shall yield the right of way to other vehicles which have entered the intersection from the through highway or which are approaching so closely on the through highway as to constitute an immediate hazard, but said driver having so yielded may proceed and the drivers of all other vehicles approaching the intersection on the through highway shall yield the right of way to the vehicle so about to enter or cross the through highway."

Substantial evidence was produced on behalf of respondent to support the findings of fact complained of, and to establish the exercise by him of ordinary care in the circumstances presented herein: That he stopped and waited for traffic to pass before entering the intersection; that as he started into the intersection a truck passed by and he waited until it had progressed a distance of 75 yards; that he then proceeded to cross the boulevard at a speed of 15 miles per hour, having first looked to his left; that when he was near the center line of Olympic, he looked to his right, did not see appellant approaching, and continued across the boulevard until he was struck. Meanwhile, appellant with knowledge of respondent's presence within the intersection, traveled 300 or 400 feet at a speed of 40 to 45 miles per hour, and skidded 99 feet before striking the extreme right rear end of respondent's automobile. From this it would appear that appellant's failure to yield the right of way (Veh. Code, § 552) to respondent, who was lawfully crossing the boulevard, was the proximate cause of the collision. As stated in *Casselman* v. *Hartford A. & I. Co.*, 36 Cal.App.2d 700, 708 [98 P.2d 539], "This appellant, in common with many users of the highways, seems to have the impression that every motorist who attempts to enter a main highway from a side road, does so at his peril. This misconception of the law is a prolific source of accidents. As we have shown, such motorist has very definite rights granted to him by the provisions of the Vehicle Code, and those users of the main highway who ignore such rights must be prepared to pay the penalty."

In conclusion, findings of fact VII, VIII and IX, to the

effect that during appellant's last 100 feet of approach to said intersection he failed to yield the right of way to respondent and was guilty of negligence contributing to the collision; that the defense of contributory negligence was established; and that appellant's injuries resulted proximately from his own negligence,—are supported by the law and the evidence and therefore were properly made by the trial court.

For the reasons stated, the judgment appealed from is affirmed.

Doran, J., and White, J., concurred.

A petition for a rehearing was denied June 27, 1944, and appellant's petition for a hearing by the Supreme Court was denied August 3, 1944.