[Civ. No. 14618. First Dist., Div. Two. Aug. 27, 1951.]

DENNIS GRASSO, a Minor, etc., et al., Appellants, v. ANTONIO CUNIAL et al., Respondents.

D. W. Brobst and Enrico Dell'Osso for Appellants.

Dana, Bledsoe & Smith and Morton B. Jackson for Respondents.

GOODELL, J.—Plaintiff sued on behalf of himself and his 6-year-old son for personal injuries sustained by them when their Chevrolet collided with the Oldsmobile driven by defendant. The jury returned a verdict for defendant and after the denial of a new trial plaintiffs appealed.

The collision occurred in the intersection of Ashby Avenue and Seventh Street in Berkeley, in the early afternoon of Saturday, September 27, 1947. Ashby Avenue runs approximately east and west, and is 56 feet wide, with its center marked by a double white line, on either side of which are two marked traffic lanes and a parking area. Seventh Street runs approximately north and south and is 46 feet wide, with no mark designating its center and no marked traffic lanes. An arterial stop sign at the southeast corner of the intersection controlled traffic crossing Ashby.

On that day a football game was scheduled and both eastbound lanes on Ashby Avenue were crowded with cars "bumper to bumper" headed toward the stadium.

The plaintiff J. Grasso had taken his son for a ride and was traveling westerly on Ashby Avenue. Defendant was traveling northerly on Seventh Street and riding with him was a family friend.

Appellants' first contention is that the evidence is insufficient to sustain the judgment, their claim being that defend-

ant's "conduct in driving across Ashby Avenue was in clear violation of Sections 525 and 552 of the . . . Vehicle Code."

Ashby Avenue was a "through highway" as defined by section 82.5, Vehicle Code, with a stop sign protecting its traffic.

Subdivision (a) of section 552, Vehicle Code, at the time in question read as follows: "The driver of any vehicle shall stop as required by this code at the entrance to a through highway and shall yield the right of way to other vehicles which have entered the intersection from the through highway or which are approaching so closely on the through highway as to constitute an immediate hazard."

The following facts are undisputed: the weather was fair, the visibility good, and the streets dry. Defendant stopped at the arterial stop sign for three or four minutes, his car being headed northerly in the middle of the east (or his right) half of Seventh Street. His progress was blocked by the two lanes of eastbound traffic on Ashby. When a break came, a motorist on his left (whose eastbound car on Ashby was partly in the westerly half of Seventh) signalled him to cross over, and he started up, shifting from low to second gear and driving across Ashby without slackening his speed. His car was wholly north of the center line of Ashby, with its front within 5 feet of its northerly curb line (extended), when appellant's Chevrolet, traveling west on Ashby, struck it squarely in the middle of its right side. The impact smashed in the whole front of appellant's car, shoved respondent's Oldsmobile several feet, and threw Dennis from the back seat over the front seat and against the dashboard.

Just before the collision appellant had turned into Ashby from San Pablo Avenue and the westbound traffic on Ashby was light. His car was ahead of several others. In a signed statement given to the investigating officer he admitted "driving west on Ashby about 25 miles per hour." In court he testified "I wouldn't say exactly, I was going between 15 and 20 or 25 miles an hour." He admitted that he did not see respondent's car at any time approaching from the left, or until it was 10 or 15 feet in front of him. He testified also that as he approached the intersection there was no movement of traffic; "everything was stopped."

A Berkeley police officer who promptly reached the scene placed the point of impact 12 feet 9 inches south of the north curb of Ashby and 24 feet 10 inches west of the east curb of Seventh. His point represented the center of respondent's

car at the instant of impact. Since it was about 16 feet long, this put its front about 4 feet 9 inches south of the north line of the intersection, and since Seventh Street is 46 feet wide it put the point of impact 22 inches left of the center of Seventh. The officer's measurements were based on debris found on the scene.

The conflicts are as follows: appellant testified that the accident happened about 1 p. m. while other witnesses, (including the investigating officer), fixed it at 2, 2:10 or 2:15. Respondent testified that his speed in crossing Ashby was approximately 7 or 8 miles an hour, while appellant testified that respondent's car ''shot out of there into my—I would say he was going 10, 12, 15 miles an hour, the way he shot out of there.'' Appellant testified that before the collision he was driving ''maybe four or five feet from the double line'' which would put him in the inner or southern lane (westbound) of Ashby, while the investigating officer (appellants' witness) placed the point of impact clearly within Ashby's outer or northern lane.

One of appellant's principal points is that respondent was negligent in crossing Ashby ''without having an opportunity to know whether or not an automobile was approaching so closely as to be an immediate hazard.'' Respondent and his passenger both testified that at the center line of Ashby (as soon as they cleared the two lanes of eastbound cars) they looked to the right and saw appellants' car at a distance of from 75 to 100 feet east of the intersection. Respondent when closely questioned testified that the distance was about twice the length of the courtroom, or about 88 feet.

Another one of appellants' main points is that respondent in crossing Ashby drove left of the center of Seventh Street. The witness Rose Bonkofsky, who was driving a car immediately behind respondent gave testimony which lent support to this, and appellant testified that ''at the point of impact his [respondent's] whole car was to the west side of the intersection.'' Mrs. Bonkofsky had testified that when respondent stopped at the arterial sign he was on his right-hand side and in about his proper place. Both respondent and his passenger testified that when he started up he drove in a straight course and never got over the center of Seventh Street.

So far as the conflicts are concerned, it goes without saying that on appeal the testimony must be viewed in the light

most favorable to the respondent. If that rule is to be followed, we must assume that the jury found that respondent was traveling at only 7 or 8 miles an hour; that appellant was going 25; that respondent had a proper lookout for "immediate hazards," and that he stayed on the right side of Seventh Street.

We find nothing in this case to distinguish it from any other intersection case where there is conflicting testimony on questions which are purely for the jury. The verdict shows that the jury resolved all these conflicts in favor of the defendant.

■ At the time in question section 525, Vehicle Code, read: " . . . Upon all roadways of sufficient width a vehicle shall be driven upon the right half of the roadway . . ." (None of the four exceptions found in this section touches this case.)

Let it be assumed that respondent did get over the line in crossing Ashby. There is abundant evidence to show that if he did, he was forced to do so in driving through the two lanes of traffic which had blocked him. (See *Henslee* v. *Fox*, 25 Cal.App.2d 286 [77 P.2d 307]; *Fietz* v. *Hubbard*, 59 Cal.App.2d 124, 128 [138 P.2d 315].) Had he not moved through when he had the chance he would have held up everything behind him on Seventh Street. What he did was an ordinary, every-day maneuver for any motorist if no traffic was coming in the opposite direction. Moreover, although appellants lay considerable stress on this point they do not show by argument, citation, or otherwise, how such driving left of center could have been a proximate cause of the accident, or could have contributed to it in any degree. As respondent argues, assuming that the Oldsmobile had been *wholly* over to the left of center the collision would have happened just the same. If it had been entirely to the right of the center the collision would have occurred a split-second earlier and, theoretically at least, the force of the impact would have been greater. With respect to a somewhat similar situation the court said in *Jacobsen* v. *Vaughn*, 131 Cal.App. 277, 280 [21 P.2d 141], a right-angle intersection case: "If, as claimed, a portion of [plaintiff's] car was on her left-hand side of the center of that road, the only effect would have been to give Vaughn [defendant] more time to avoid the accident . . ."

Appellants lay equal if not greater stress on what they

claim was respondent's failure to make sure that no vehicles were "approaching so closely on the through highway as to constitute an immediate hazard."

Section 552 does "not set a hard and fast rule for the conduct of drivers approaching through highways." Whether a driver acts with due care or negligently in proceeding across a through highway is a jury question (*Wilkinson* v. *Marcellus*, 51 Cal.App.2d 630, 633 [125 P.2d 584]). In *Hershey* v. *Laswell*, 63 Cal.App.2d 219, 222 [146 P.2d 509], the court said: "The trial court adopted defendants' theory that plaintiffs' car was not close enough to constitute an immediate hazard and that implied finding is conclusive on appeal under such circumstances. (*Dickinson* v. *Pacific Greyhound Lines*, 55 Cal.App.2d 824 [131 P.2d 401].)" That language fits the instant case. In *Glynn* v. *Vaccari*, 64 Cal.App.2d 718, 721 [149 P.2d 409], the court says: "As stated in *Casselman* v. *Hartford A. & I. Co.*, 36 Cal.App.2d 700, 708 [98 P.2d 539], 'This appellant, in common with many users of the highways, seems to have the impression that every motorist who attempts to enter a main highway from a side road, does so at his peril. This misconception of the law is a prolific source of accidents. As we have shown, such motorist has very definite rights granted to him by the provisions of the Vehicle Code, and those users of the main highway who ignore such rights must be prepared to pay the penalty.'" The "very definite rights" are given the motorist by subdivision (b) of section 552 which provides that after the driver has "yielded" by stopping at an arterial sign he "may proceed *and the drivers of all other vehicles approaching the intersection on the through highway shall yield the right of way* to the vehicle so about to enter or cross the through highway." (Italics added.) Respondent's conduct must be viewed, of course, in relation to appellant's conduct. As said in *Angelo* v. *Esau*, 34 Cal.App.2d 130, 137 [93 P.2d 205], "The circumstance that a driver is using a through highway . . . does not absolve him from making ordinary use of his faculties."

A driver on a through highway like any other motorist must maintain a proper lookout and keep his car under control (*Marshall* v. *Klatt*, 19 Cal.App.2d 110, 112-113 [64 P.2d 1105]; *Stup* v. *Higgins*, 41 Cal.App.2d 379 [106 P.2d 931]) and whether or not he does so is a question for the jury (*Roller* v. *Daleys, Inc.*, 219 Cal. 542 [28 P.2d 345]; *Morehead* v. *Roehm*, 118 Cal.App. 312 [4 P.2d 995]).

■ The discussion of this phase of the case can be brought to a conclusion by the citation of the leading case of *Couchman* v. *Snelling*, 111 Cal.App. 192, 195-6 [295 P. 845], where the court said:

"Where a car has actually entered an intersection before the other approaches it, the driver of the first car has the right to assume that he will be given the right of way and be permitted to pass through the intersection without danger of collision. He has a right to assume that the driver of the other car will obey the law, slow down, and yield the right of way, if slowing down be necessary to prevent a collision. (*Keyes* v. *Hawley*, 100 Cal.App. 53, 60 [279 P. 674].)
■ Nor is a plaintiff required to yield the right of way to one a considerable distance away whose duty it is to slow down in crossing an intersection. (*Whitelaw* v. *McGilliard*, 179 Cal. 349 [176 P. 679].)"

The Supreme Court approved and adopted that statement in *Page* v. *Mazzei*, 213 Cal. 644, 645 [3 P.2d 11], and both the Couchman and Page cases have been repeatedly followed.

While the Couchman case did not involve a "through highway" intersection, several cases have applied the rule to such intersections (e.g., *Demers* v. *Sutherland*, 117 Cal.App. 489, 494 [4 P.2d 187]; *Morehead* v. *Roehm*, 118 Cal.App. 312, 316 [4 P.2d 995]) and at least one has applied it to an intersection controlled by automatic stop-and-go signals (*Shifflette* v. *Walkup Drayage etc. Co.*, 74 Cal.App.2d 903, 910 [169 P.2d 996]). There can be no doubt of the applicability of the rule in this case in view of the clear language of subdivision (b) of section 552. See, also, *Leblanc* v. *Coverdale*, 213 Cal. 654, 657-8 [3 P.2d 312].

Counsel argue that appellant was not exceeding the legal rate of speed as he drove down Ashby Avenue. ■ In *Reaugh* v. *Cudahy Packing Co.*, 189 Cal. 335, 340 [208 P. 125], the court said, " . . . even though the statutory limitation of speed has not been exceeded, the rate of speed at which an automobile may be traveling may be held under some circumstances to be negligent." And in *Malinson* v. *Black*, 83 Cal.App.2d 375, 379 [188 P.2d 788], we said, " . . . proof that one did not violate the speed limit does not establish freedom from negligence. One may observe one rule of the road but violate others." Moreover, as respondent points out, the jury might have concluded from all the circumstances that appellant was in fact exceeding 25 miles an hour.

We are satisfied that there was abundant evidence to support the verdict.

Appellants' second contention is that "The court committed prejudicial error in instructing the jury that a violation of section 525 . . . was not negligence as a matter of law."

The instruction reads: "I instruct you that the mere fact, standing alone, if you find it to be true, that a person was operating his vehicle to the left of the center line of a highway, is not, under all circumstances, negligent as a matter of law. On the other hand, it is for you to determine from all the facts and circumstances whether such conduct was, in fact, negligent."

We are satisfied that there was no error in the instruction.

In *Finney* v. *Wierman*, 52 Cal.App.2d 282, 286 [126 P.2d 143], the court said: "The operator of a car obviously is not guilty of negligence as a matter of law merely because he drives the car into another lane or onto the left side of the highway [citations]."

Express approval was given to the Finney case by the Supreme Court in *Mathers* v. *County of Riverside*, 22 Cal.2d 781, 785 [141 P.2d 419], where, in discussing an instruction which told the jury that if plaintiff violated section 525 she "was guilty of negligence per se" the court said: "The rule is elastic. It is not a rigid rule the violation of which under all circumstances constitutes negligence as a matter of law [citations, including *Finney* v. *Wierman*]. A court may or may not accept the standard of conduct prescribed in a criminal statute as a basis of a civil suit for negligence, and if it does not, the trier of fact must determine whether the actor has conducted himself as a man of ordinary prudence. (*Clinkscales* v. *Carver*, 22 Cal.2d 72 [136 P.2d 777].) The standard fixed by a criminal statute is not necessarily under all circumstances the standard in a civil action for negligence. Its violation may not constitute negligence as a matter of law where such violation occurs as the result of acts in emergencies under the proper circumstances. (*Finney* v. *Wierman, supra*; *Jolley* v. *Clemens*, 28 Cal.App.2d 55 [82 P.2d 51]; *Freitas* v. *Passerino, supra*; *Hill* v. *Peres, supra*)."

It is self-evident that if respondent did drive somewhat left of center such action could not possibly have been a proximate cause of the collision, since, as we have pointed out earlier, it simply delayed for a split second an occurrence

which was inevitable. For this reason, if for no other, the instruction was not erroneous.

Appellants' third contention is that the court erred in giving the following instruction:

"It was the duty of the plaintiff, J. Grasso, to use reasonable care to look for vehicles on the street before he attempted to cross it. This duty is not fulfilled by looking and failing to see that which is readily and clearly visible. When to look is to see, the mere statement that one did look and could not see will be disregarded as testimony."

Counsel argue that appellant had the right to rely upon the presumption that other drivers would not violate the law. Subdivision (b) of section 552 already discussed laid on appellant the duty of yielding the right of way to respondent who was not only *in* the intersection, but almost entirely across it. We have already cited cases dealing with the duty of a driver in a "through highway" to keep a lookout and maintain control at all times. Those cases and the rule of *Couchman* v. *Snelling, supra,* and *Page* v. *Mazzei, supra,* fully answer appellants' attack on this instruction.

Appellants next attack the following instruction:

"You are instructed that even though a person has the right of way he is still under an obligation to exercise ordinary care at all times to avoid an accident. In that connection, I further instruct you that a person cannot drive carelessly and negligently from a place of safety into a place of danger merely and solely because he has the right of way over some other vehicle."

In the first place, appellant did not have the right of way; respondent had it, and it is difficult to see why defendant tendered the instruction since it is based on that false premise. That appellant while driving on Ashby was in a place of safety (to himself) is obvious, and that when he entered the intersection he drove into a place of danger (to all concerned) is equally obvious. There was no error.

Finally appellants complain of the court's refusal to give the following instruction: "If you believe from the evidence that at the time and place of the accident in question the plaintiff, J. Grasso, was acting as would a reasonably prudent person under like circumstances, then and in that event he was not guilty of any negligence," when it would have balanced off a somewhat similar one which was given at

defendant's request. We find no merit in this claim since the jury were fully and fairly instructed on the whole subject.

The judgment is affirmed.

Nourse, P. J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied October 25, 1951.