[Civ. No. 14732.   First Dist., Div. One.   Aug. 29, 1951.]

ELMER S. VAN CISE, Respondent, v. GEORGE LENCIONI et al., Appellants.

Phillip Barnett and Robert L. Dreyfus for Appellants.

Ralph Wertheimer for Respondent.

PETERS, P. J.—Plaintiff, Elmer Van Cise, was injured when the motor scooter he was operating was hit by a truck owned by the defendant Evans Auto and Truck Rental Company and being driven by defendant George Lencioni. Plaintiff charged that the accident was proximately caused by the negligence of defendants. They denied negligence and affirmatively pleaded contributory negligence on the part of plaintiff. The jury brought in a verdict for plaintiff in the amount of $3,000. Defendants appeal from the judgment entered on the verdict.

Appellants do not challenge the amount of the award. They first contend that the record demonstrates contributory negligence on the part of respondent as a matter of law. There is no merit to this contention.

The accident occurred in Healdsburg about 10:30 a. m. on August 23, 1947. Respondent was driving a single-seat motor scooter, which he had operated for about three and a half months prior to the accident. This is a two-wheel motor-propelled vehicle about four feet long and three feet high. Unlike a motorcycle, it has but one driving gear. After the motor is started the vehicle is propelled forward by stepping on the accelerator. Both the accelerator and the brake are foot-operated, both being operated with the same foot. The brake was in good working condition on the day of the accident. The scooter was painted a bright red. ▪ At the oral argument counsel for appellants suggested that to drive such a vehicle on a main highway might itself be contributory negligence. The point is frivolous. Such a vehicle is duly licensed by the state, and is therefore as much entitled to use the streets and highways as any other licensed vehicle.

On the day before the accident respondent had driven his scooter from San Francisco, his then residence, to a small town north of Healdsburg. He was looking for properties in which to invest. Early in the morning of August 23d he started back towards San Francisco on U. S. 101, a main highway that runs north and south through Healdsburg, and which, in the city, is known as West Street. Within the city this highway is crossed at right angles by a street running east and west known as North Street. The accident occurred in this intersection.

The other vehicle involved in the accident was being driven by appellant Lencioni. It was a 1946 or 1947 model stake body truck that had been rented from appellant Evans Auto and Truck Rental Company. Lencioni, with his wife, was

transporting two or three tons of lumber from San Francisco, his residence, to his summer home in Geyserville, which is north of Healdsburg. At the time of the accident Lencioni was driving north on U. S. 101.

The morning of August 23, 1947, was dry and clear. The two streets involved are asphalt paved, straight in line, and level in grade. About 10:30 in the morning in question, respondent, while proceeding south on 101, approached the intersection of that highway with North Street, and noticed a real estate office located on 101 near the intersection. There were many cars parked on 101 north and south of the intersection and he could not readily find a place to park. He turned west on North Street, intending to circle the block and look for a place to park near the real estate office. After he had proceeded about a half block on North Street he turned into an alley, thinking that he could encircle the block in that way. The alley had no outlet to the next street, so he turned around and then turned east on North Street.

Where highway 101 and North Street intersect there are marked crosswalks for pedestrians across both 101 and North Street. Highway 101 is an arterial highway, that is, there are stop signs for traffic crossing it from North Street. Respondent, travelling east on North Street, still looking for a parking place, stopped his scooter at the westerly line of the crosswalk. Because of the parked cars on the west side of 101 south of the intersection, he could not see very far south on 101. He thereupon "walked" his scooter across the crosswalk to a point even with the curb line of 101, and again stopped, to let by some ten or twelve automobiles that were travelling north on 101. After the last of these cars had passed, and while respondent was still stopped, he first noticed the Lencioni truck travelling north on 101. At that time Lencioni was about three-quarters of a block or a block south of the intersection. Respondent started across the intersection, going about 4 or 5 miles per hour or slower. He did not again look towards the approaching truck, but kept his eyes straight ahead on the pedestrian walk on the east side of 101. In the meantime, Lencioni was proceeding towards the intersection from the south at a speed that he estimated at about 15 miles per hour. He testified that he saw respondent stop at the intersection and proceed slowly across the street. He repeatedly testified that when he first noticed the scooter his truck was just about to enter the south crosswalk of West Street. This testimony not only conflicts with that of re-

spondent as to location of the truck when he started to cross the intersection, but is contradicted by the physical facts. If Lencioni's story is true, he was but about 25 feet from the admitted point of impact at a time that he places respondent over 50 feet from that spot. With respondent travelling not more than 4 miles per hour, and Lencioni admittedly travelling 15 miles per hour, one does not have to be a mathematician to conclude that, if the two vehicles were in the positions fixed by Lencioni, the accident would never have happened.

But the accident did happen. Lencioni admitted that after he first observed the scooter he kept his eyes on it right up to the moment of impact, and he testified that he observed that respondent was looking straight ahead. Nevertheless, he did not slow down, change his course, or blow his horn before hitting respondent. He did not apply his brakes until the scooter was half way across the intersection, and then it was too late. He ran into the scooter in the southeast corner of the intersection. At that point respondent was almost across the street. He almost cleared the truck, but the extreme right front bumper of the truck hit the very rear end of respondent's scooter. The scooter was tipped over by the impact onto respondent's left leg. The force of the impact knocked respondent and the scooter across the intersection for a distance of about 40 feet. The truck, after the impact, proceeded to the north pedestrian walk of West Street before stopping. There were skid marks leading to the stopped truck about 15 to 20 feet in length.

The first contention of appellants is that this evidence establishes, as a matter of law, that respondent was contributively negligent. They rely upon respondent's testimony that, after he observed the truck while he was stopped, he proceeded across the busy intersection without again looking to his right to observe oncoming cars. They rely heavily on Lencioni's testimony as to the relative positions of the two vehicles, and in disregard of respondent's testimony, argue that under section 552 of the Vehicle Code, Lencioni, as a matter of law, had the right of way. At the time of this accident subdivision "a" of that section read: "The driver of any vehicle which has stopped as required by this code at the entrance to a through highway shall yield the right of way to other vehicles which have entered the intersection from the through highway or which are approaching so closely

on the through highway as to constitute an immediate hazard.''

The contention is entitled to but scant consideration. Of course respondent's testimony places the truck three-quarters of a block away when respondent started to cross the intersection. While there are inconsistencies and some conflicts in respondent's testimony, it was for the jury to resolve these conflicts and inconsistencies. This is not a function of the appellate court. (*People* v. *Crownover*, 34 Cal.App.2d 7 [92 P.2d 929]; *Angelo* v. *Esau*, 34 Cal.App.2d 130 [93 P.2d 205]; *People* v. *Holman*, 72 Cal.App.2d 75 [164 P.2d 297].) In support of the judgment we must adopt that interpretation of the evidence most favorable to respondent. If the truck was nearly a block away when respondent started to cross, he was not required, as a matter of law, to yield the right of way to the oncoming truck. Whether a vehicle is or is not approaching so closely as to constitute an immediate hazard is a question of fact and not of law. (*Zwerin* v. *Riverside Cement Co.*, 52 Cal.App.2d 715 [126 P.2d 920]; *Wilkinson* v. *Marcellus*, 51 Cal.App.2d 630 [125 P.2d 584]; *Hershey* v. *Laswell*, 63 Cal.App.2d 219 [146 P.2d 509]; *Glynn* v. *Vaccari*, 64 Cal.App.2d 718 [149 P.2d 409].) Contributory negligence and proximate cause are normally questions of fact, and only in most unusual cases, of which this is not one, do they become questions of law. (See cases collected 19 Cal.Jur. p. 735, § 141.) When a driver stops at an arterial stop and observes an approaching vehicle, whether it is or is not negligence to proceed without again looking at the approaching vehicle is a question of fact and not of law. (*De Priest* v. *City of Glendale*, 74 Cal.App.2d 464 [169 P.2d 17]; *Jensen* v. *Hansen*, 12 Cal.App. 2d 678 [55 P.2d 1201]; *Stephens* v. *Kaufmann*, 137 Cal.App. 328 [30 P.2d 536]; *White* v. *Davis*, 103 Cal.App. 531 [284 P. 1086]; *Armstrong* v. *Studer*, 2 Cal.App.2d 166 [37 P.2d 475]; *Isaacs* v. *City & County of San Francisco*, 73 Cal.App.2d 621 [167 P.2d 221]; *Malinson* v. *Black*, 83 Cal.App.2d 375 [188 P.2d 788].) In addition, the jury was entitled to consider the admitted fact that Lencioni had his eyes on the scooter at all times, yet did not turn the truck nor blow his horn, nor put on his brakes until too late. (*Podeszwa* v. *White*, 99 Cal.App.2d 777 [222 P.2d 683].) • The jury could also consider the point and force of the impact, the skid marks, etc. The implied finding of the jury that the accident

was proximately caused solely by the negligence of Lencioni is supported by ample, substantial and convincing evidence.

■ Appellants next contend that the verdict was rendered in a most irregular way, and in a manner prejudicial to appellants. The contention is based upon the following facts: After the jury had deliberated for about an hour and a half it returned to the courtroom and the foreman informed the court that a verdict had been reached. A $3,000 verdict against both appellants, signed by the foreman, was handed to and read by the clerk. The clerk asked if the verdict was that of at least nine of the jurors. The foreman replied that it was. At the request of counsel for appellants the jury was polled by the clerk. Six jurors answered "yes" and six "no" to the question as to whether the verdict that had been read was their verdict. The judge thereupon polled the jury, and eight jurors answered that the verdict was theirs, and four that it was not. The judge thereupon stated: "I have polled the jury, and it takes nine of your members. Let's not have any discussion and under the circumstances you will have to resume your deliberations. All right, you may retire with the bailiff."

The jury thereupon retired for a second time, returned to the courtroom in 10 minutes, and brought in exactly the same verdict as had first been returned. Upon being polled by both the clerk and the judge, 10 members stated that the verdict was their verdict and two stated that it was not.

The above is all that appears concerning the incident in the reporter's transcript.

There can be no doubt that the trial court acted properly in returning the jury for further deliberations after it was discovered that nine members had not agreed with the first verdict. Section 618 of the Code of Civil Procedure provides: "When the jury, or three-fourths of them, have agreed upon a verdict, they must be conducted into court, their names called by the clerk, or by the court if there be no clerk, and the verdict rendered by their foreman. The verdict must be in writing, signed by the foreman, and must be read to the jury by the clerk, or by the court if there be no clerk, and the inquiry made whether it is their verdict. Either party may require the jury to be polled, which is done by the court or clerk, asking each juror if it is his verdict. If upon such inquiry or polling, more than one-fourth of the jurors disagree thereto, the jury must be sent out again, but if no such

disagreement be expressed, the verdict is complete and the jury discharged from the case.''

Thus, it is quite apparent that when a poll discloses that more than one-quarter of the members of the jury disagree with the verdict, the trial judge retains control of the proceedings, and may properly order the jury to retire and again consider the case. (*Earl* v. *Times-Mirror Co.,* 185 Cal. 165 [196 P. 57] ; *Megee* v. *Fasulis,* 65 Cal.App.2d 94 [150 P.2d 281] ; *Sparks* v. *Berntsen,* 19 Cal.2d 308 [121 P.2d 497].) Thus, so far as the proceedings are disclosed by the reporter's transcript, everything that was done was in precise accord with the law.

But appellants do not limit themselves to what appears in the reporter's transcript. They rely upon an affidavit of their attorney filed on the motion for a new trial. This affidavit avers that after the poll was taken by the judge and it was disclosed that there was no proper verdict, the foreman discussed the matter with several jurors while they were still in the jury box. It is further averred that when the court ordered the jury to retire and resume deliberations, there was handed to the foreman the blank form of verdict in favor of defendants, and the signed invalid verdict for plaintiff' that had already been read, and which had already been stamped by the clerk. After the jury had retired for the second time and was still deliberating, counsel for appellants moved for a mistrial on the ground of irregularity of proceedings. This motion was denied.

It is argued that the discussions in the jury box among the jurors, and ordering the jury to resume deliberations without giving the jury new forms of verdict, was prejudicial error. It is urged that handing back to the jury the invalid verdict amounted to directing a verdict for respondent.

There was no doubt some irregularity in the proceedings. The discussion that took place between the jurors in the jury box in the confusion that resulted when it was discovered that the original verdict was invalid in no way adversely affected appellants. No doubt it would have been better procedure had new blank forms of verdict been handed the jury when the order was made to resume deliberations, and it undoubtedly was irregular to give them only the invalid filled-in form of verdict already rendered, but such irregularity could not possibly have affected adversely the legal rights of appellants. No doubt, had counsel for appellants called this fact to the attention of the court before the jury retired for the second

time, this irregularity would not have occurred. The record shows that counsel for appellants made no such request. In addition, it affirmatively appears from the record that this irregularity did not prejudice appellants. In opposition to the motion for a new trial respondent filed the affidavit of the foreman of the jury. From that affidavit it appears that when the jury first retired it determined in five minutes, by a ten to two vote, that appellants were liable. Then for an hour and a half they debated the amount of the verdict. Two jurors were in favor of awarding $2,000, and two were in favor of $5,000. The rest agreed on $3,000. Finally, they voted to award $3,000, two voting ''no'' because they wanted to award $5,000. Thus, when eight jurors told the judge that the $3,000 verdict had been approved by them, and four stated that it had not, two of the four disapproved because the verdict was not big enough. When the jury retired the second time, the foreman, according to his affidavit, explained to the jury that the case was wide open again and that they could vote any way they pleased. After ten minutes' discussion 10 jurors voted to award $3,000. The other two voted ''no'' solely because they wanted to award $5,000.

It is quite clear that this affidavit of the foreman was properly considered by the trial court on the motion for a new trial, because it did not impeach the verdict, but rather supported it. (See cases collected 24 Cal.Jur. p. 877, § 126.) No contention is made to the contrary. Thus, it is quite clear that the trial court's determination on the motion for new trial that no prejudice resulted from the irregularity under discussion was amply justified.

The last contention of appellants is that respondent was guilty of prejudicial misconduct in his closing argument to the jury in that over objections of counsel for appellants he read to the jury certain proposed instructions which were not later given by the court. The oral argument does not appear in the record. Appellants rely on an affidavit filed by their counsel on a motion for a new trial in which this charge of misconduct is made. Respondent's counsel does not admit the facts to be as set forth by appellants.

Appellants have not presented a proper record on appeal that will permit this court to consider this assignment of error. Under the Rules on Appeal it is incumbent upon the appellant to present a proper record to the appellate court. The oral arguments are not included in the reporter's transcript unless specially requested. If counsel

desire to urge error in the oral argument it is essential that he order the argument included in the transcript.  In the absence of such a record it must conclusively be presumed that no error in the argument occurred. (Rule 52 of the Rules on Appeal; *People* v. *Hidalgo,* 78 Cal.App.2d 926 [179 P.2d 102]; see, generally, *Alkus* v. *Johnson-Pacific Co.,* 80 Cal.App.2d 1 [181 P.2d 72]; *People* v. *Crain,* 102 Cal.App.2d 566 [228 P.2d 307]; *Palpar, Inc.* v. *Thayer,* 83 Cal.App.2d 809 [189 P.2d 752], 82 Cal.App.2d 578 [186 P.2d 748]; *Gardner* v. *Shreve,* 89 Cal.App.2d 804 [202 P.2d 322].) For these reasons, there being no proper record before us, this claimed error cannot be considered by this court.

The judgment appealed from is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.